UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PATRICIA KENNEDY,

          Plaintiff,

v.                                                      Case No: 6:17-cv-537-Orl-40DCI

CAPE SIESTA MOTEL, LLC and
FAWLTY TOWERS, INC.,

          Defendants.
_____/

## ORDER

This cause is before the Court without oral argument on the parties' cross-motions for summary judgment (Docs. 21, 36) and the responses thereto (Docs. 26, 40). With briefing complete, the matter is ripe. Upon consideration, Defendants' motion is due to be granted in part and denied in part. Plaintiff's motion is due to be denied.

**I.    BACKGROUND**

Plaintiff, Patricia Kennedy, sues Defendants, Cape Siesta Motel, LLC and Fawlty Towers, Inc., seeking a declaratory judgment and injunctive relief under Title III of the Americans with Disabilities Act ("**ADA**"), 42 U.S.C. §§ 12181–12189. Plaintiff is unable to walk, has limited use of her hands, and relies on a wheelchair to move. (Doc. 1, ¶ 1; Doc. 21-1, ¶ 3). Plaintiff is an ADA tester, meaning she travels throughout Florida visiting public facilities checking for ADA compliance. (Doc. 21-1, ¶ 4). Where compliance is lacking, she sues—often in this Court. (*Id.*).

On February 15, 2017, Plaintiff visited the Fawlty Towers Motel (the "**Property**"), located at 100 East Cocoa Beach Causeway, Cocoa, Florida. (*Id.* ¶ 5). While there, she

claims she suffered discrimination caused by architectural barriers in the parking lot and inside the motel. (*Id.*). The alleged violations are documented in the Complaint, an affidavit submitted by Plaintiff, and a report filed by ADA compliance professional, Carlos M. Herrera. (Docs. 1, 21-1, 21-2). Plaintiff instituted this suit to remedy these alleged ADA violations. (Doc. 1).

Plaintiff lives in Tamarac, Florida (Doc. 21-1), approximately 175 miles from the Property.[1] (Doc. 1, ¶ 7). She also recently "acquired a second residence in D[eB]ary, Florida," located approximately seventy-nine miles from the Property. (Doc. 40, p. 2; Doc. 40-1, ¶ 5). Plaintiff avers that she travels between her homes two or three times a month, and "[o]n those occasions when [she] take[s] I-95, [she] drive[s] through Brevard County on the way." (Doc. 40-1, ¶ 5). It is unclear how many times Plaintiff has visited the Property. Plaintiff's Answers to the Court's Interrogatories provide that she visited the Property twice, "September 3, 2016 in mid-afternoon and October 1–2, 2016," (Doc. 9-1), while her affidavit dated November 10, 2017, states that she visited the Property only

---

[1] Although neither party offered evidence as to this distance, the Court calculated this distance through a Google Maps query of the distance between Plaintiff's address and the address of the Property, see Google Maps, www.maps.google.com (last visited Sept. 13, 2018), and takes judicial notice of that fact. *See* Fed. R. Evid. 201(b)(2), (c)(1), (d); *Munson S.S. Lines v. Newman*, 24 F.2d 416, 417 (5th Cir. 1928) (taking judicial notice of distance between cities); *U.S. v. Williams*, 476 F. Supp. 2d 1368, 1378 n.6 (M.D. Fla. 2007) ("A Court may take judicial notice of the driving distance between two points located in the record using mapping services whose accuracy cannot reasonably be questioned."). The relevant addresses are drawn from Plaintiff's answers to court interrogatories and the Amended Complaint. (Docs. 9-1, ¶ 1; 13; ¶ 6).

once, on February 15, 2017. (Doc. 21-1, ¶ 5).[2] Plaintiff gave both statements under penalty of perjury. (Docs. 9-1, 21-1).

Plaintiff states she "plan[s] [to] return[] to Brevard County frequently within the next few months." (Doc. 21-1 ¶ 10; Doc. 40-1, ¶ 7). Those plans include a return to the Property "in the near future to avail [her]self of the goods and services made available" and to check for ADA compliance. (Doc. 21-1 ¶ 10; Doc. 40-1, ¶ 7).[3] Also noteworthy is the concern expressed in Plaintiff's brief that she is deterred from returning to the Property based on the "existence of the violations at the *shopping plaza*." (Doc. 40, p. 3).

Both sides move for summary judgment. (Docs. 21, 36).

## II.  STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials" when resolving a motion for summary judgment. Fed. R. Civ. P. 56(c)(3); *see also HRCC, LTD v. Hard Rock Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (per curiam)

---

[2]  The receipt for Plaintiff's February 15, 2017, stay can be found at Docket Entry 26-1. No receipts were submitted documenting Plaintiff's alleged October 1–2, 2016, stay at the Property. (*See* Doc. 9-1).

[3]  Plaintiff recites identical vague statements of her intent to return to Brevard County and the Property in her affidavits. (Doc. 21-1, ¶ 10; Doc. 40-1, ¶ 7).

(holding that a district court does not err by limiting its review to the evidence cited by the parties in their summary judgment briefs).[4]

A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record demonstrating the absence of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to demonstrate that there are, in fact, genuine factual disputes which preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). Summary judgment is proper when a plaintiff fails to adequately prove an essential element of their claim. *Celotex*, 477 U.S. at 322–23.

## III. DISCUSSION

### A. Article III Standing

In their Motion for Summary Judgment, Defendants contend that Plaintiff lacks standing under Article III of the U.S. Constitution because Plaintiff failed to establish a real and immediate threat of future injury. (Doc. 36, pp. 2–5). In support, Defendants note that Plaintiff (i) lives approximately 175 miles from the Property, (ii) has visited the

---

[4] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

Property on at most three occasions, and (iii) lacks definite plans to return. (*Id.* at pp. 3–5).

A plaintiff must satisfy three requirements to establish standing: (1) injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) that it is likely the injury will be redressed by a favorable ruling. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (holding that a "some day" intent to return is insufficient); *see also Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013). The injury-in-fact component requires a plaintiff seeking prospective injunctive relief to plausibly show that she will suffer future disability discrimination by the defendant. *Houston*, 733 F.3d at 1328. This means that the threat of future injury must be "real and immediate—as opposed to merely conjectural or hypothetical." *Id.* at 1329. Specifically, "a plaintiff seeking an injunction under Title III either must 'have attempted to return' to the non-compliant building or at least 'intend to do so in the future.'" *Id.* at 1336 (citing *Shotz v. Cates*, 256 F.3d 1077, 1082 (11th Cir. 2001)). Generally, a plaintiff's "profession of an 'inten[t]' to return to the places [she] ha[s] visited before" is insufficient to establish standing to pursue injunctive relief. *Lujan*, 504 U.S. at 564.

Analyzing the threat of future discrimination frequently turns on four factors:[5] "(1) the proximity of the defendant's business to the plaintiff's residence; (2) the plaintiff's past patronage of the defendant's business; (3) the definiteness of the plaintiff's plan to return; and (4) the frequency of the plaintiff's travel near the defendant's business." *See Houston*, 733 F.3d at 1327; *see also Hoewischer v. Cedar Bend Club, Inc.*, 877 F. Supp. 2d 1212,

---

[5] These four factors comprise the "'proximity test' employed by district courts throughout this circuit." *Kennedy v. Beachside Comm. Props.*, 732 F. App'x 817, 819 (11th Cir. 2018)

5

1222 (M.D. Fla. 2012). These factors are not exclusive, nor is a single factor dispositive; rather a court "must consider the totality of all relevant facts to determine whether a plaintiff faces a real and immediate threat of future injury." *Houston*, 733 F.3d at 1337 n.6.

Under the totality of the facts, Plaintiff's intent to return to the Property is too uncertain to establish that Plaintiff has sustained an injury-in-fact. Plaintiff has proffered little more than a "some day" intent to return to the Property. *See Lujan*, 504 U.S. at 560. Simply put, there is nothing "actual or imminent" about Plaintiff's threat of future injury.

First, the proximity factor weighs decisively against a finding that Plaintiff has standing. Plaintiff resides approximately 175 miles from the Property, a distance that negates the likelihood of future injury absent other connections to the area. *See Houston*, 733 F.3d at 1337 (finding standing present where the plaintiff lived 30.5 miles from the business in question, but noting, "[o]f course, different facts may demand a different conclusion" had the plaintiff lived "hundreds of miles away from the store with no particular reason to return"); *Kennedy*, 732 F. App'x at 819, 822 (holding the plaintiff lacked standing in part because she lived "175 miles away from the premises"). Plaintiff's "occasion[al]" travels between her Tamarac and DeBary residences do not alter this conclusion. (*See* Doc. 40-1, ¶ 5). Brevard County spans a large area,[6] and it is unclear if her inter-residence travels bring Plaintiff anywhere near the Property. Even more, the Property is a motel and Plaintiff makes no mention of spending the night in Cocoa to break up the four-hour trip.[7] And although Plaintiff's secondary DeBary residence is closer to the Property than her Tamarac home, a seventy-nine-mile distance is substantial and cuts against a finding that

---

[6] *See infra* p. 8 & n.9.

[7] *See supra* note 1.

Plaintiff has standing. *See Alvey v. Gualtieri*, No. 8:15-cv-1861, 2016 WL 6087874, at *3–4 (M.D. Fla. Oct. 18, 2016) (finding the plaintiff lacked standing to seek prospective relief stemming from ADA claims involving a property seventy-five miles from the plaintiff's residence).

Second, the past patronage factor weighs in Plaintiff's favor. As noted above, the record is muddled with regard to Plaintiff's past patronage of the property. Plaintiff's responses to the Court's interrogatories, which were submitted April 13, 2017, recount two visits to the Property: September 3, 2016, and October 1–2, 2016. (Doc. 9-1). The responses failed to mention a February 15, 2017, visit that was asserted in an affidavit dated November 10, 2017. (*See* Doc. 9-1; Doc. 21-1, ¶ 5). Setting aside this discrepancy and viewing the conflicting facts in Plaintiff's favor, this factor shows an "'attempt[] to return' to the non-compliant building." *See Houston*, 733 F.3d at 1336 (quoting *Shotz*, 256 F.3d at 1081).

Third, Plaintiff fails to demonstrate a definite plan to return. Plaintiff states generically that she plans to return to the Property "in the near future to avail [her]self of the goods and services made available" and to check for ADA compliance. (Doc. 21-1, ¶ 10; Doc. 40-1, ¶ 7). These generic statements of intent express little more than a "some day" plan. *See Lujan*, 504 U.S. at 560. Further, these statements are in stark contrast to the demonstrated intent to return shown by the plaintiff in *Houston* who "dr[ove] right by the [property] on a regular basis." *See* 733 F.3d at 1340.[8] Plaintiff's "plan" to return to

---

[8] In finding that Houston had standing to pursue similar ADA claims, the Eleventh Circuit noted:

> Houston visits his lawyer's offices near the [non-compliant premises] on a frequent basis and, thus, drives by the store frequently. During these trips

7

Brevard County often "within the next few months" fails to move the needle. Brevard County consists of 1,015.192 square miles of land territory.[9] Plaintiff's vague plans to visit a county roughly the size of Samoa[10] in the coming months simply do not amount to a concrete and realistic plan that Plaintiff will return to the Property. *See Houston*, 733 F.3d at 1340; (Doc. 21-1, ¶ 10).

Fourth, Plaintiff has not shown she frequently travels near the Property. Plaintiff states in her affidavit that she visits Brevard County "as often as two or three times a month," (Doc. 21-1, ¶ 10; Doc. 40-1, ¶ 4), and she has visited Brevard County "no fewer than fifty" times since her initial visit to the Property (Doc. 40-1, ¶ 4). Again, Brevard County is a large area and Plaintiff's many visits *somewhere* in the county fail to demonstrate she travels near the Property often. Accordingly, this factor militates against finding that Plaintiff has standing.

---

> to his lawyer's office in the near future, he wants to visit the store. Unlike the plaintiffs in *Lujan*, Houston has averred a concrete and realistic plan of when he would visit the store again.

*Houston*, 733 F.3d at 1340. Unlike Houston, Plaintiff lacks a meaningful connection to the property in dispute, so she uses "overly-broad and vague language as a 'catch-all' to hope that her claim will stick." *See Kennedy*, 732 F. App'x at 822; (Doc. 21-1, ¶ 10; Doc. 40-1, ¶ 7). The Constitution demands more.

[9] *U.S. Gazetteer Files: 2017*, U.S. Census Bureau, https://www2.census.gov/geo/docs/maps-data/data/gazetteer/2017_Gazetteer/2017_gaz_counties_12.txt (last visited Sept. 13, 2018). As a "matter of geography," the Court is free to take judicial notice of Brevard County's size. *See Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997).

[10] *See Demographic Yearbook—Table 3: Population by Sex, Rate of Population Increase, Surface Area and Density*, United Nations Statistics Division (2010), https://data.mongabay.com/igapo/world_statistics_by_area.htm; *see also supra* note 9.

In sum, three of the four factors weigh against Plaintiff's standing. Thus, having weighed the totality of the facts in view of the "proximity test" factors, the Court finds that Plaintiff has not demonstrated that she will likely return to the Property and face discrimination. *See Houston*, 733 F.3d at 1337 n.6. Plaintiff's boilerplate language, broad statements of intent, and contradictions[11] undercut the argument that she will likely return. She has no standing. Because Plaintiff lacks standing, the Court is without subject matter jurisdiction over the case. *See Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014). The Complaint is therefore due to be dismissed.[12]

The Court now addresses Plaintiff's remaining arguments in opposition to Defendants' summary judgment motion: that the "proximity test" (1) is inappropriate in the hotel context, and (2) "contradicts the futile gesture" language of the ADA. (Doc. 40, pp. 5–7). Plaintiff does not cite caselaw binding on this Court in support of either argument and, regardless, they are deficient. (*Id.*). First, the Eleventh Circuit has favorably cited the "proximity test" in several decisions. *See, e.g.*, *Kennedy*, 732 F. App'x at 819; *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 832 (11th Cir. 2017). The fact that the subject property is a hotel does not render the test inapplicable. Indeed, other courts have applied the "proximity test" in ADA cases challenging hotel accommodations. *See, e.g.*, *Nat'l All.*

---

[11] As noted above, Plaintiff offers conflicting sworn statements regarding her past patronage of the Property. (Docs. 9-1, 21-1). Further, Plaintiff refers to the Property—which is a motel—as a "shopping plaza" in one of the briefs. (Doc. 40, p. 3). Plaintiff's apparent confusion as to the character of the Property undercuts her argument that she has definite plans to return soon "to avail [her]self of the goods and services made available" there. (Doc. 21-1, ¶ 10).

[12] The grant of summary judgment for lack of subject-matter jurisdiction is treated as a dismissal under Federal Rule of Civil Procedure 12(b)(1). *Aqua Log, Inc. v. Lost & Abandoned Pre-Cut Logs & Raft of Logs*, 709 F.3d 1055, 1058 (11th Cir. 2013).

*for Accessibility, Inc. v. Triad Hosp. Corp.*, No. 1:11–cv–527, 2012 WL 996661, at *5 (M.D.N.C. Mar. 23, 2012). Second, turning to Plaintiff's "futile gesture" argument, the Court agrees with the premise that "plaintiffs need not engage in the 'futile gesture' of visiting a building containing known barriers that the owner has no intention of remedying . . . ." *Resnick v. Magical Cruise Co.*, 148 F. Supp. 2d 1298, 1302 (M.D. Fla. 2001) (quoting *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000)). However, as the foregoing discussion demonstrates, Plaintiff has not shown that she "would visit the building in the imminent future but for those barriers," which Plaintiff must show to avail herself of the "futile gesture" exception. *See id.* (same). Thus, the "proximity test" is wholly consistent with the "futile gesture" exception.

Plaintiff includes additional meritless arguments in her briefing challenging the validity of the "proximity test" and the present state of Constitutional standing doctrine generally. (Doc. 40, pp. 6, 8–14). They deserve little attention, however, as they patently contradict binding Supreme Court and Eleventh Circuit caselaw. As an inferior tribunal bound by the appellate courts' decisions, this Court is powerless to ignore binding caselaw foreclosing Plaintiff's standing.

## IV.   CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment (Doc. 36) is **GRANTED in part** and **DENIED in part**.
    a. The Motion for Summary Judgment based on Plaintiff's lack of standing is **GRANTED**.
    b. The Motion is otherwise **DENIED**.

2. Plaintiff's Motion for Summary Judgment (Doc. 21) is **DENIED**.

3. This case is **DISMISSED** for lack of subject matter jurisdiction.

4. The Clerk of Court is **DIRECTED** to terminate all pending deadlines and close the case.

**DONE AND ORDERED** in Orlando, Florida on October 4, 2018.

*[Signature]*
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties